Rickey Fantroy v. Carolyn Fantroy


















IN THE
TENTH COURT OF APPEALS
 

No. 10-02-008-CV

Â Â Â Â Â RICKEY FANTROY, SR.,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â CAROLYN MAE HOWARD FANTROY,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee

AND IN THE INTEREST OF R.F., A CHILD
 

From the 18th District Court
Johnson County, Texas
Trial Court # D2001-05094
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Rickey Fantroy, acting pro se, appeals from a final divorce decree. He complains that:
Â Â Â Â Â Â 1.Â Â Â Venue was proper in Dallas County, not Johnson County, and the trial court in Johnson
County should have granted his motion to transfer venue.
Â Â Â Â Â Â 2.Â Â Â A final divorce decree issued in Dallas County is the controlling decree, not the Johnson
County decree.
Â Â Â Â Â Â 3.Â Â Â The provision in the divorce decree concerning religious training of his child is
unconstitutional.
Â Â Â Â Â Â We will affirm.
Rickeyâs Brief
Â Â Â Â Â Â Rickey presents no authority in his brief to support his complaints, nor does he cite to the
record. Also, he makes very little argument. The appellate rules require that â[t]he brief must
contain a clear and concise argument for the contentions made, with appropriate citations to
authority and to the record.â Tex. R. App. P. 38.1(f), (h), 38.2(a)(1). Usually, by failing to cite
to the record and to authorities, and to argue its issues, a party waives review of the issues. Fox
v. Parker, 98 S.W.3d 713, 728 (Tex. App.âWaco 2003, pet. denied); Franklin v. Enserch, Inc.,
961 S.W.2d 704, 711 (Tex. App.âAmarillo 1998, no pet.); Sisters of Charity of the Incarnate
Word v. Gobert, 992 S.W.2d 25, 31 (Tex. App.âHouston [1st Dist.] 1997, no pet.); Leyva v.
Leyva, 960 S.W.2d 732, 734 (Tex. App.âEl Paso 1997, no writ). However, because the interests
of a child are involved, we will review Rickeyâs complaints.
Background
Â Â Â Â Â Â Rickey and Carolyn Fantroy were married in 1997, and they are the parents of a child, R.F.,
born in 1998. They separated, and in January 2001 Carolyn filed an original petition for divorce
in Johnson County. In February 2001, by counsel, Rickey filed an answer, a motion to transfer
venue, and a plea in abatement. There was a hearing on the venue motion on February 23, but
there is no written order in the record. In mid-February, again by the same counsel, Rickey filed
an original petition for divorce in Dallas County. In that suit, Carolyn apparently did not answer
or appear. In spite of the Dallas County suit, on February 29, 2001, Rickey and his attorney (and
Carolyn and her attorney) signed a binding Mediated Settlement Agreement, filed in Johnson
County, which was to resolve the divorce. Tex. Fam. Code Ann. Â§ 153.0071(d) (Vernon 2002). 
The trial court had ordered the parties to mediation on February 23. Id.
Â Â Â Â Â Â However, in April 2001, Rickeyâs counsel withdrew in the Johnson County suit, citing
inability to effectively communicate with him. On April 17, acting pro se, Rickey filed what he
called a revocation of his consent to the Mediated Settlement Agreement. On May 4, 2001, again
pro se, Rickey obtained a default judgment before a visiting judge in Dallas County. He was
appointed sole managing conservator and Carolyn was appointed possessory conservator. The
decree contained the standard statutory provisions, and Carolyn was ordered to pay child support.
Â Â Â Â Â Â Meanwhile, the case proceeded in Johnson County. Carolyn also filed a motion for a new
trial in Dallas County. On May 21, 2001, the Dallas County trial court granted the motion, set
aside the divorce decree, and dismissed Rickeyâs action. Then, on May 24, 2001, Carolyn
obtained a final divorce decree in Johnson County.
Â Â Â Â Â Â After various post-decree motions and hearings, the Johnson County trial court issued another
Final Decree of Divorce on November 6, 2001. Carolyn and Rickey were appointed joint
managing conservators, and Carolyn was adjudged the right to establish the residence of R.F. 
Neither party was ordered to pay child support. Some, but not all, of the standard statutory
provisions are included in the decree. Rickey appeals from this decree.
In Which County is Venue Proper?
Â Â Â Â Â Â The Johnson County trial court proceeded with the lawsuit after the hearing on Rickeyâs
motion to transfer venue, so impliedly it denied the motion. A trial court must determine venue
solely on the pleadings and any attached affidavits. Tex. Civ. Prac. & Rem. Code Ann. Â§
15.064(a) (Vernon 2002); Tex. R. Civ. P. 87.3; Ruiz v. Conoco, Inc., 868 S.W.2d 752, 757 (Tex.
1993). Venue facts pled are taken as true unless specifically denied by the adverse party, in which
event the party pleading venue must make prima facie proof of the venue fact. Tex. R. Civ. P.
87.3(a). On appeal, however, the court must review the entire record including any trial evidence. 
Tex. Civ. Prac. & Rem. Code Ann. Â§ 15.064(b) (Vernon 2002); Wilson v. Texas Parks &
Wildlife Dept., 886 S.W.2d 259, 261-62 (Tex. 1994); Ruiz, 868 S.W.2d at 757-58. Venue may
be proper in many counties, and, if so, the plaintiff may chose the county in which to file suit. 
Wilson, 886 S.W.2d at 260. If the plaintiff filed suit in a county of proper venue, the trial court
may not transfer venue to another county which also would have been proper if chosen by the
plaintiff. Id. at 261. Reversal is mandatory if the motion to transfer was erroneously granted or
denied. Tex. Civ. Prac. & Rem. Code Ann. Â§ 15.064(b); Wichita County, Texas v. Hart, 917
S.W.2d 779, 781 (Tex. 1996); Ruiz, 868 S.W.2d at 757.
Â Â Â Â Â Â A divorce action may be filed in Texas if either the petitioner or respondent has been a
domiciliary of Texas for six months before suit. Tex. Fam. Code Ann. Â§ 6.301 (Vernon 1998). 
Venue is fixed in the county in which that same party has resided for ninety days before suit. Id. 
If a child is involved, the trial court has jurisdiction within the divorce action, regardless of where
the child resides. Id. Â§ 103.001(a)(2) (Vernon 2002). Carolyn responded to Rickeyâs challenge
to venue by filing an affidavit in which she swore she had continuously resided in Johnson County
since March 2000. Carolyn made prima facie proof of the venue facts required in section 6.301. 
Tex. R. Civ. P. 87.3(a).
Â Â Â Â Â Â We overrule this complaint.
Which Decree Controls?
Â Â Â Â Â Â The Dallas County trial court granted Carolynâs motion for a new trial, set aside the divorce
decree, and dismissed Rickeyâs action. Thus, there is no valid divorce decree from Dallas
County. As a result, Rickeyâs argument that a decree from there controls is completely without
merit. We overrule this complaint.
Is the Provision About Religious Training Unconstitutional?
Â Â Â Â Â Â Apparently Rickey is complaining about a provision in the divorce decree that confers on
Carolyn the âduty of care, control, protection, and moral and religious training, and reasonable
discipline of the child.â The Family Code grants a parent appointed as a conservator âthe right
to direct the moral and religious training of the child.â Tex. Fam. Code Ann. Â§ 153.074(5)
(Vernon 2002). Rickey says the provision in the decree violates the freedom of religion provisions
of the First Amendment: âCongress shall make no law respecting an establishment of religion, or
prohibiting the free exercise thereof . . . .â U.S. Const. amend. I. The Establishment Clause
of the First Amendment applies to the states through the Fourteenth Amendment. Zelman v.
Simmons-Harris, __ U.S. __, 122 S.Ct. 2460, 2465, __ L.Ed.2d __ (2002); Green v. United
Pentecostal Church, 899 S.W.2d 28, 29 (Tex. AppâAustin 1995, writ denied). It prohibits
government from enacting laws that have either the âpurposeâ or âeffectâ of advancing or
inhibiting religion. Zelman, 122 S.Ct. at 2465.
Â Â Â Â Â Â We find no basis for concluding that section 153.074(5) or the provision in this decree has the
âpurposeâ or âeffectâ of advancing or inhibiting religion. They merely express what commonly
occurs in parenting, i.e., parents may provide for the religious development of their children as
they see fit. We overrule this complaint.
Conclusion
Â Â Â Â Â Â We overrule Rickeyâs complaints and affirm the Final Decree of Divorce.


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â BILL VANCE
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Before Justice Vance, and
Â Â Â Â Â Â Justice Gray



Affirmed
Opinion delivered and filed October 1, 2003
[CV06]



line-height:200%'>   Exculpatory results would serve only
to muddy the waters regarding YarbroughÂs guilt.Â  See Kutzner v. State,
75 S.W.3d 427, 439 (Tex. Crim. App. 2002); Carter v. State, 134 S.W.3d 484,
486 (Tex. App.ÂWaco 2004, no pet.).Â  This is particularly true in view of the
fact that the record contains sufficient other evidence tending to connect
Yarbrough to the commission of the offense as a party.Â  Thus, we conclude that
Yarbrough failed to prove beyond a reasonable doubt that that he would not have
been convicted if exculpatory results were obtained. Â We overrule YarbroughÂs
first issue.

We affirm the order denying YarbroughÂs motion for
postconviction DNA testing.

Â 




Â 

Â 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed

Opinion delivered and
filed March 12, 2008

Publish

[CRPM]









[1]
Â Â Â Â Â Â Â Â Â Â Â Â Â  One of the eyewitnesses stated
that the Âwhite maleÂ Âlooked like he might have been Hispanic.Â

Â 





[2]
Â Â Â Â Â Â Â Â Â Â Â Â Â  The other witness identified
the person in photo Ânumber 5Â in a photographic line-up as the Caucasian, but
it is not clear from the limited record before us whether Yarbrough was the
person identified.

Â 





[3]
Â Â Â Â Â Â Â Â Â Â Â Â Â  Brumfield pleaded guilty and
testified against Yarbrough.





[4]
Â Â Â Â Â Â Â Â Â Â Â Â Â  It is undisputed that the
remainder of the evidence referred to in YarbroughÂs brief remains in the
StateÂs possession in a condition making DNA testing possible and has been
subjected to a sufficient chain of custody.Â  See Tex. Code Crim. Proc. Ann. 64.03(a)(1)(A) (Vernon 2006).





[5]
Â Â Â Â Â Â Â Â Â Â Â Â Â  YarbroughÂs co-defendant
Brumfield is currently serving his prison sentence for this offense.Â  At the
hearing, Yarbrough argued that a specimen of BrumfieldÂs DNA should be obtained
either from a blood specimen allegedly taken from Brumfield when he was
initially imprisoned at TDCJ or by court order requiring that a new blood
specimen be drawn.Â  Yarbrough does not refer to these contentions in his
appellantÂs brief but does argue that certain evidence in the StateÂs
possession should be tested for BrumfieldÂs DNA.





[6]
Â Â Â Â Â Â Â Â Â Â Â Â Â  Yarbrough likewise wanted to
establish the presence of BrumfieldÂs DNA in the fingernail scrapings he sought
to obtain from ShawÂs body.